UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Shan Wong, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-11642-DJC |
| ) | |
| Resolve Technology, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                          July 25, 2011

## I.   Introduction

Plaintiff Shan Wong ("Wong") brings this action against Defendant Resolve Technology ("Resolve") alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and breaches of contract and the implied covenant of good faith and fair dealing in connection with Resolve's termination of her employment.  Resolve has now moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule ("Rule") 12(b)(6), or, in the alternative, for summary judgment under Rule 56 and Wong has moved for leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a)(2).  For the reasons set forth below, Resolve's motion to dismiss is GRANTED and Wong's motion to amend is DENIED.

## II.   Burden of Proof and Standard of Review

Whether a complaint should survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard.  Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 (2007).  In determining plausibility, the court

should first identify and disregard conclusory allegations. Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 129 S.Ct. at 1949-50). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio–Hernández, 640 F.3d at 12. The remaining "[n]on-conclusory factual allegations in the complaint must be then treated as true, even if seemingly incredible" and assessed to determine whether they, "'allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. at 12 (quoting Iqbal, 129 S.Ct. at 1949, 1951). If they do, "the claim has facial plausibility." Id. at 12 (quoting Iqbal, 129 S.Ct. at 1949).

In ruling on a Rule 12(b)(6) motion to dismiss, the Court "'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.'" Clorox Co. v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996) (further citation omitted)). The Court does so here.[1]

---

[1] Resolve's motion introduces exhibits of the administrative charge of discrimination, including the MCAD charge and the MCAD's decision. Consideration of these exhibits does not convert Resolve's motion to dismiss to one for summary judgment. The Court's consideration of the content of the MCAD charge is appropriate in light of Wong's reference to the administrative charge by attaching the EEOC's dismissal letter to the complaint. See, e.g., Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (recognizing that a court's consideration of "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint" does not convert a motion to dismiss to one for summary judgment) (citing cases). Consideration of the employment offer letter is also proper without converting the motion to dismiss into one for summary judgment since Plaintiff referenced in her complaint her employment "contract" with Resolve, but did not attach it to her complaint. (Compl. ¶¶ 18, 19, 20). See Watterson, 987 F.2d at 3. Moreover, Wong does not voice any opposition to consideration of these exhibits and it appears undisputed that they are authentic versions of the documents. See id.; Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F .3d 30, 33-34 (1st Cir. 2001).

**III.    Factual Background**

    **A. Terms and Conditions of Wong's Employment**

Resolve hired Wong as a Business Analyst in February 2007. (Compl. ¶ 2).[2] Upon hiring, she signed an offer letter with Resolve setting forth the terms and conditions of her employment which indicated that her employment was at-will. (Def. Mot., Ex. A ¶ 4). Paragraph 4 of the offer letter states, in relevant part, "Your employment with Resolve Technology, Inc. will be on an 'at-will' basis. This means that either you or the Company is free to terminate the relationship at any time, for any reason." (Def. Mot., Ex. A ¶ 4). The offer letter also presents a summary of Resolve's compensation package, including a bonus. Paragraph 3(b) provides, in pertinent part:

> "**Bonus**. The Employee may be eligible for an annual bonus. Target Bonus Pool of 10% based on specific role metrics to be defined within first 45 days of employment and overall company performance . . . The Employee must be actively employed at the Company at the time a bonus is considered in order to receive a bonus. Note that all bonuses are discretionary and, if awarded, are awarded in the Company's sole discretion. Bonuses are dependent based on role objectives and company's performance."

(Def. Mot., Ex. A ¶ 3(b)) (emphasis in original). Resolve's offer letter also "reserve[d] the right to unilaterally alter, amend or discontinue any of its policies, plans or procedures, at its sole discretion." (Def. Mot., Ex. A ¶ 5). Approximately seven months later, on September 4, 2007,

---

[2]For the purposes of this Memorandum and Order, all references to the parties' filings and docket are abbreviated as follows: Wong's complaint ("Compl."); Resolve's memorandum of law in support of its motion to dismiss or alternatively, for summary judgment ("Def. Memo."); Wong's opposition to Resolve's motion to dismiss ("Pl. Opp."); Resolve's Reply to Wong's opposition to its motion to dismiss ("Def. Reply"); Wong's motion for leave to file an amended complaint ("Pl. Mot. to Amend"); Resolve's opposition to Wong's motion for leave to file an amended complaint ("Def. Opp. to Pl. Mot. to Amend"); Wong's Sur-Reply to Resolve's Reply to Wong's opposition to Resolve's motion to dismiss ("Pl. Sur-reply"); and the Court's docket ("D.").

Resolve terminated Wong's employment. (Compl. ¶ 3). The complaint alleges that Wong was wrongly terminated and discriminated against when she needed and sought an accommodation from Resolve to seek medical treatment for TMJ and a head injury. (Compl. ¶¶ 3-5).

### B. Wong's MCAD Charge

Several months after her termination, on December 19, 2007, Wong filed a charge with the Massachusetts Commission Against Discrimination ("MCAD") alleging she was discriminated against by Resolve, but based not upon her TMJ and head injury as now alleged in the complaint, but upon "Disability, AIDS perceived." See Def. Reply, Ex. 2 (copy of original MCAD charge).[3]

The MCAD investigated Wong's charge and in its investigative disposition, stated that Wong had alleged "discrimination based upon Disability (AIDS perceived)." See Def. Mot., Ex. B (Investigative Disposition) at 1.[4] The investigative commissioner addressed whether Wong had established a prima facie case of discrimination because she was perceived to have or be at risk of having HIV and on July 31, 2009, dismissed Wong's claim for lack of probable cause. Id. at 2-4. The MCAD further explained that even if Wong had demonstrated a prima facie case of perceived disability discrimination, Resolve had provided legitimate non-discriminatory reasons for terminating her employment, namely "erratic and repeated absences as well as her work performance," and that Wong offered no evidence to show that such reasons were merely a pretext for discrimination. Id. at 3. After Wong appealed on October 5, 2009 (Pl. Opp., Ex. A (appeal

---

[3] The EEOC received notice of the charge filed with the MCAD on January 8, 2008. See Def. Reply, Ex. 1.

[4] The Court may also take judicial notice of the MCAD's decision without converting Resolve's motion to one for summary judgment. See, e.g., Pease v. Burns, 719 F. Supp. 2d 143, 146 & n.1 (D. Mass. 2010) (taking judicial notice of Massachusetts Division of Administrative Law Appeals decision).

letter)), the MCAD informed Wong on December 29, 2009 that it had affirmed its finding of lack of probable cause on her discrimination charge. See Pl. Opp., Ex. B (12/29/09 MCAD Letter to Wong). On June 28, 2010, Wong received a Right to Sue letter by the EEOC, which stated that the EEOC had adopted the MCAD's findings regarding her charge. See 6/28/10 EEOC letter attached to Complaint.

**IV.    Procedural History**

Wong filed the instant complaint on September 27, 2010, alleging violation of the ADA for failure to provide an accommodation for mental disability (Count I), breach of contract (Count II) and breach of implied covenant of good faith and fair dealing (Count III). (D. 1). Resolve subsequently moved to dismiss. (D. 13). After Wong filed her opposition to Resolve's motion, she moved to amend her complaint. (D. 16, 19). The Court heard oral argument on the motions on June 17, 2011. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**V.    Discussion**

    **A.    Resolve's Motion to Dismiss Pursuant to Rule 12(b)(6)**

        **1.    Count I:  Discrimination on the Basis of Disability under the ADA**

In the complaint, Wong alleges that during her employment at Resolve, she was seeking medical treatment for TMJ and a head injury and that at the time of her termination, she was entitled to a disability accommodation under ADA and company policy but that Resolve did not provide her the opportunity to apply for the disability accommodation or for short term disability. (Compl. ¶¶ 4, 5). Her ADA claim in Count I, captioned "Mental Disability Accommodation," only alleges that she believes her "disability was a factor in defendants' decision to terminate her" and that such "discrimination was in violation [of the] ADA. . . ." (Compl. ¶ 8).

"[I]t is well-settled that an employee alleging discrimination must file an administrative claim with the E.E.O.C. or with a parallel state agency before bringing a civil action." Thornton v. UPS, Inc., 587 F.3d 27, 31 (1st Cir. 2009) (citing Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999)).  Filing an administrative claim "gives notice to both the employer and the agency of an alleged violation and affords an opportunity to swiftly and informally take any corrective action necessary to reconcile the violation." Thornton, 587 F.3d at 31 (citing Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir. 1990)).  In light of this purpose, "[t]he scope of the civil complaint is . . . limited by the charge filed with the EEOC [or MCAD] and the investigation which can reasonably be expected to grow out of that charge.  Thornton, 587 F.3d at 31.  As the First Circuit has explained, "the scope of a civil action is not determined by the specific language of the charge filed with the agency, but rather, may encompass acts of discrimination which the MCAD investigation could reasonably be expected to uncover." Davis v. Lucent Tech., Inc., 251 F.3d 227, 233 (1st Cir. 2001) (citation omitted).  "[T]he exact wording of the charge of discrimination need not 'presage with literary exactitude the judicial pleadings which may follow.'" Powers, 915 F. 2d at 39 (citation omitted).  The scope of the suit is "nonetheless constrained by those allegations in the sense that the judicial complaint must bear some close relation to the allegations presented to the agency." Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005).

As Resolve correctly points out, Wong's disability claim raised in her complaint, based on "TMJ and head injury," was not included in her original MCAD charge. The original charge submitted to the MCAD and transmitted to the EEOC states that Wong alleged discrimination on the basis of perceived HIV or AIDS, not on the basis of Wong's TMJ or head injury.  Although in a March 10, 2008 letter to the MCAD that Wong has now proffered to the Court, Wong noted that

she had been involved in a car accident in May 2006 and had been receiving treatment for severe migraines, neck, back and TMJ since then, even in that letter she repeatedly claimed that Resolve had discriminated on the basis of the perception that she had AIDS: "I want to bring charges against Resolve Technology regarding discrimination on disability. I was being discriminated against while I was employed at Resolve and they terminated me when they found out that my husband was HIV positive." (Pl. Mot. to Amend, Ex. A at 2). Her MCAD charge and March 2008 letter to the MCAD indicate that Wong was alleging that she was discriminated against based on her perceived HIV status after some of her co-workers overheard her having a conversation with her husband's doctor about her husband's condition. Wong consistently alleged disability discrimination by her employer based upon the perception that she had HIV/AIDS because her husband has HIV or perceived disability or "disability of association." See Def. Reply, Ex. 2; Pl. Mot. to Amend, Ex. A.

Nonetheless, contrary to Resolve's suggestion otherwise, the scope of this suit is not strictly limited to the allegations in the original MCAD complaint. The Court must look to the investigation that was reasonably expected to grow out of the MCAD filings. "To be within the investigatory scope, the agency must be informed of the claim in the complaint[,] or during the period of investigation." Moorer v. Dep't of Social Servs., No. 08-11584, 2010 WL 3258609, at *9 (D. Mass. Jan. 25, 2010) (quoting Ianetta v. Putnam Inv., Inc., 142 F. Supp. 2d 131, 134 (D. Mass. 2002)). It is the "EEOC investigation [that] could reasonably be expected to grow from the original complaint" that controls. Powers, 915 F.2d at 39 n.4 (1st Cir. 1990) (citation omitted). See also Oblesby v. Coca-Cola Bottling Co., 620 F. Supp. 1336, 1344 (N.D. Ill. 1985) (noting that "[w]hat controls is not what the EEOC did but what it was given the opportunity to do").

Here, the MCAD investigated Wong's charge of "discrimination based upon Disability

(AIDS perceived)." See Def. Memo., Ex. B at 1. The investigating commissioner's analysis considered Wong's allegations and concluded that plaintiff had not established a prima facie case of discrimination against her due to the perception that she had or was at risk of having HIV. Id. at 1-4. Prior to the close of the investigation, Wong had not informed the MCAD that she sought to add another claim of discrimination, namely Resolve's alleged failure to provide her with a reasonable accommodation for her own disability (her TMJ and head injury). Thus, it cannot be said that Wong's ADA disability claim was within the scope of the agency's investigation of her MCAD charge. See Lattimore v. Polaroid Corp., 99 F.3d 456, 464-65 (1st Cir. 1996) (recognizing that "the direction and scope of the investigation are guided by the allegations contained in the charge").

In her appeal to the MCAD dated October 5, 2009, Wong appears to raise for the first time her claim that Resolve discriminated against her based on the failure to provide her with an accommodation based on "a head injury due to the car accident and treatment for pregnancy." However, the MCAD's decision had already been issued and thus its investigation was completed on July 31, 2009 when the MCAD issued its lack of probable cause ("LOPC") finding. Everett v. 357 Corp., 453 Mass. 585, 602 (2009) (noting that "[o]nce a LOPC determination issues, the administrative investigation is closed"). Wong does not cite any authority and the Court has not found any for the proposition that the MCAD preliminary appeals process permits introduction of new allegations that were not included in the already completed investigation of an MCAD charge. In fact, it appears that the opposite is true. In Everett, 453 Mass. at 603-04, the Supreme Judicial Court rejected plaintiff's argument that his allegations of discrimination brought after the conclusion of the MCAD's investigation of his original charge were within the scope of the MCAD's investigation merely because he raised them in his preliminary appeal from the MCAD's LOPC

8

determination. Here, even if the Court concluded that the October 5, 2009 letter raised Wong's allegations of discrimination based on both her TMJ[5] and head injury, they were raised for the first time before the MCAD in an appeal after the investigation had been completed. Accordingly, it cannot be said that such allegations were within the scope of the MCAD's investigation or could have been uncovered in a reasonable investigation. See id.; see also Lattimore, 99 F.3d at 464-65. Thus, Wong cannot use her prior MCAD charge (discrimination based upon perceived AIDS) as a basis to now bring a new claim of discrimination for "TMJ and head injury" under the ADA. See, e.g., Tayag v. Lahey Clinic Hospital, Inc., 677 F. Supp. 2d 446, 454-55 (D. Mass. 2010) (dismissing as unexhausted plaintiff's Title VII discrimination claim based on race, religion and national origin where the plaintiff's MCAD charge only alleged discrimination based on disability); Patoski v. Jackson, 477 F. Supp. 2d 361, 363 (D. Mass. 2007) (dismissing race-based discrimination claim for plaintiff's failure to include it in his EEOC charge based on age and/or gender discrimination and holding that a claim of race-based discrimination could not have reasonably grown out of an EEOC investigation of age and/or gender discrimination).[6]

Although "[i]n cases where, as here, the employee acts *pro se*, the administrative charge is

---

[5]Wong does not expressly mention TMJ in the October 5, 2009 letter.

[6]Other courts that have considered this issue agree. See, e.g., Johnson v. Chevron Corp., No. C 07-5756 SI, 2009 WL 1404699, at *11 (N.D. Cal. May 19, 2009) (finding that "[p]laintiff's EEOC/DFEH Charge of Discrimination referenced only his work-related injuries, not his HIV/AIDS status" and as a result, "[p]laintiff cannot file an EEOC/DFEH Charge of Discrimination based on one type of disability, and then sue based on a different disability"); Schwertfager v. City of Boynton Beach, 42 F. Supp. 2d 1347, 1355 n.7 (S.D. Fla. 1999) (finding that administrative claim for physical disability did not exhaust remedies on later raised claim for mental disability); Moore v. City of Overland Park, 950 F. Supp. 1081, 1086 (D. Kan. 1996) (holding that discrimination claims based on different disabilities from the disability mentioned in the administrative complaint failed to satisfy the exhaustion requirement and were therefore barred).

liberally construed in order to afford the complainant the benefit of any reasonable doubt . . . However, *pro se* status does not relieve an employee of the obligation to meet procedural requirements established by law." Lattimore, 99 F.3d at 464 (citations omitted). The purpose of administrative exhaustion "would be frustrated if an employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." Id. Construing the scope of investigation rule as to defeat administrative exhaustion here would significantly weaken the Commission's authority to investigate and conciliate claims of disability discrimination in the first instance by allowing many more claims to evade the Commission's scrutiny. See Tayag, 677 F. Supp. 2d at 454 (noting that "the purpose of the administrative filing is . . . to provide the MCAD with an opportunity to investigate and conciliate the claim of discrimination" and to "provide notice to the defendant of potential liability") (citation omitted).

However, to give this *pro se* plaintiff the benefit of liberally construing the amended complaint, Ahmed v. Rosenblatt, 118 F.3d 886, 891 (1st Cir. 1997), the Court has also considered whether Wong's pleading could be construed as stating a claim for unlawful retaliation. (Compl. ¶¶ 3, 5 [alleging that "plaintiff's employment was terminated by defendant when she stated that she needed some accommodation for seeking medical treatment" and that she "was seeking medical treatment for TMJ and [a] head injury"]). Even if the Court liberally construes the complaint to state such a claim–namely, that Wong was engaged in protected activity (i.e., seeking reasonable accommodation for TMJ and head injury disability); that she suffered an adverse employment action (i.e., termination); and there was a causal link between the protected activity and the adverse employment action, Rivera-Colon v. Mills, 635 F.3d 9, 12 (1st Cir. 2011)–it would suffer the same

fate as Wong's underlying discrimination claim since Wong failed to exhaust her administrative remedies in regard to this claim as well. Uphoff Figueroa v. Alejandro, 597 F.3d 423, 431 (1st Cir. 2010); see Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 87 (1st Cir. 2008) (ruling that "where, as here, administrative remedies have not been exhausted with respect to any of the other Title VII claims in the civil action, there is nothing properly before the court to which the retaliation claim may be bootstrapped").

Accordingly, since Plaintiff has failed to exhaust her administrative remedies regarding Count I, that claim is not properly before the Court and is dismissed.[7]

### 2. Count II: Breach of Contract

Under Massachusetts law, at-will employment may be terminated by either the employer or employee without reason. See, e.g., Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 8 (1st Cir. 2011) ("Under Massachusetts law, an employer has an unfettered right to discharge an at-will employee") (internal quotation marks and citation omitted); Shen v. Biogen Idec Inc., 523 F. Supp. 2d 48, 54 (D. Mass. 2007). Here, Wong's employment agreement, which she references in the complaint (Compl. ¶¶ 18, 20) was at-will. (Def. Memo, Ex. A at ¶ 4; Pl. Opp. at 5). Resolve could terminate Wong's employment at any time according to the express terms of that contract. See Shen, 523 F. Supp. 2d at 53-54.

Wong's allegation that Resolve breached the employment agreement with her by "[f]ailing to follow their own written personnel policies or to apply the same personnel policies to plaintiff that they apply to other employees" (Compl. ¶ 16) does not change the result here since as Wong herself

---

[7] In light of the Court's finding, it need not reach Resolve's argument that Wong's allegation of discrimination based upon her TMJ and head injury in her complaint is barred by the statute of limitations.

alleges, any policies were part of her employment agreement. See Jackson v. Action for Boston Cmty. Dev., Inc., 403 Mass. 8, 14-15 (1988) (finding that providing a company policy to an employee did not alter the at-will nature of the employment absent additional circumstances that clearly reflect the intention of the parties to do so). Accordingly, Plaintiff has not stated a plausible breach of contract claim and it is therefore dismissed.

### 3. Count III: Breach of Implied Covenant of Good Faith and Fair Dealing

In Count III, Wong also alleges that Resolve breached the implied covenant of good faith and fair dealing. Although the general rule in Massachusetts is that employment at-will can be terminated by either party without reason, Massachusetts has recognized certain limited exceptions to this rule where a covenant of good faith and fair dealing may be implied: (1) when an employer terminates an employee to avoid payment of future expected compensation for past services or expected benefits (the financial benefit prong) or (2) when the employment was terminated contrary to a clearly established public policy. Masso v. United Parcel Serv. of Amer., Inc., 884 F. Supp. 610, 614 (D. Mass. 1995); Shen, 523 F. Supp. 2d at 54; Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472 (1992).

Here, neither exception applies. Wong does not fit within the first exception, namely that the Resolve terminated the her employment to avoid payment of past services or benefits earned but not received. Wong makes no allegation in the complaint in this regard and the analysis, accordingly, could stop there. Even, however, if Wong's claim that Resolve terminated her to avoid paying her a bonus from the "Target Bonus Pool" that she potentially would have been eligible to receive,(Pl. Opp. at 6), had been made in the complaint, this argument is unavailing. As the Supreme Judicial Court has explained, an employee must plead and show that the employer deprived

alleges, any policies were part of her employment agreement. See Jackson v. Action for Boston Cmty. Dev., Inc., 403 Mass. 8, 14-15 (1988) (finding that providing a company policy to an employee did not alter the at-will nature of the employment absent additional circumstances that clearly reflect the intention of the parties to do so). Accordingly, Plaintiff has not stated a plausible breach of contract claim and it is therefore dismissed.

### 3. Count III: Breach of Implied Covenant of Good Faith and Fair Dealing

In Count III, Wong also alleges that Resolve breached the implied covenant of good faith and fair dealing. Although the general rule in Massachusetts is that employment at-will can be terminated by either party without reason, Massachusetts has recognized certain limited exceptions to this rule where a covenant of good faith and fair dealing may be implied: (1) when an employer terminates an employee to avoid payment of future expected compensation for past services or expected benefits (the financial benefit prong) or (2) when the employment was terminated contrary to a clearly established public policy. Masso v. United Parcel Serv. of Amer., Inc., 884 F. Supp. 610, 614 (D. Mass. 1995); Shen, 523 F. Supp. 2d at 54; Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472 (1992).

Here, neither exception applies. Wong does not fit within the first exception, namely that the Resolve terminated the her employment to avoid payment of past services or benefits earned but not received. Wong makes no allegation in the complaint in this regard and the analysis, accordingly, could stop there. Even, however, if Wong's claim that Resolve terminated her to avoid paying her a bonus from the "Target Bonus Pool" that she potentially would have been eligible to receive,(Pl. Opp. at 6), had been made in the complaint, this argument is unavailing. As the Supreme Judicial Court has explained, an employee must plead and show that the employer deprived

"the employee of money that [she] had *fairly earned* and *legitimately expected*." Maddaloni v. Western Mass. Bus Lines, Inc., 386 Mass. 877, 884 (1982) (discussing Fortune v. National Cash Register Co., 373 Mass. 96, 105 (1977)) (emphasis added). "In the typical case, the plaintiff is discharged on the eve of receiving a large bonus or commission for services rendered." Shen, 532 F. Supp. 2d at 54; see Maddaloni, 386 Mass. at 882 (finding that the employee was discharged afer his commission became payable, but before they were actually paid); Fortune, 373 Mass. at 105 (finding that the employer terminated employee after twenty-five years of service one business day after employee obtained a five million dollar order on which employer would have had to pay bonus).

Here, Wong has not pleaded, nor could she, that she earned the bonus and legitimately expected to receive one. Her offer letter makes clear that the bonus was given on an annual basis and that it was discretionary based on several factors, not merely as plaintiff states, if she worked for forty-five days. (See Def. Memo, Ex. B at 1). Moreover, Wong alleges she worked for Resolve for only seven months, from February 2007 to September 4, 2007. Because the bonus was given annually within Resolve's sole discretion, it cannot be said nor does Wong allege that she had a legitimate expectation to receive a bonus for which she would not have been eligible for another five months. Since Wong has failed to allege that she earned and had a legitimate expectation of a bonus from the Target Bonus Pool and was deprived of that bonus by Resolve, her claim does not fall under the financial benefit exception. See Shen, 523 F. Supp. 2d at 54 (finding a bonus not payable for six months did not give rise to a legitimate expectation of payment by employer).

The public policy exception also would not apply here. Massachusetts courts have interpreted the public policy exception narrowly, King v. Driscoll, 418 Mass. 576, 582 (1994); it

protects employees for asserting "a legally guaranteed right (e.g., filing a workers' compensation claim) for doing what the law requires (e.g., serving on a jury) or for refusing to do what the law forbids (e.g., committing perjury)." Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149-50 (1989). Here, Wong does not allege that she was terminated for asserting a legally guaranteed right, for doing something the law requires or for refusing to do what the law forbids. Instead, she alleges: i) that Resolve was required to "fairly, honestly, and reasonably perform the terms and conditions of the employment agreement and written personnel policies" (Compl. ¶ 18); ii) that Resolve terminated her "on the pretext that just cause existed to discharge her, when defendants knew that there was no just cause," (Compl. ¶ 20); and iii) that Resolve breached the implied covenant by "terminating plaintiff's employment without cause and for reasons that have nothing to do with legitimate business justification . . . ." (Compl. ¶ 20(B)). These allegations do not establish that Wong had asserted a legally guaranteed right and was terminated as a result. The Supreme Judicial Court has squarely rejected creating a new definition of at will employment by extending the exceptions to create "a rule that requires just cause to terminate an employee-at-will," Smith-Pfeffer, 404 Mass. at 150-51, as Wong suggests here. "The public policy exception . . . does not extend to protect socially desirable duties." Masso, 884 F. Supp. at 614 (citing Smith-Pfeffer, 404 Mass. at 150).

Wong's allegation that Resolve failed to "allow her to apply for short-term disability or give her disability to accommodation to seek medical treatment" (Compl. ¶ 20(D)) is also insufficient to establish a claim for breach of an implied covenant of good faith and fair dealing under the public policy exception. Although it is possible for such allegations to fit within the public policy exception because it would protect a plaintiff for asserting a legally guaranteed right, an at-will

employee's claim for breach of covenant of good faith and fair dealing based on a violation of public policy - here, discrimination and failure to accommodate - exists only when "there is no other adequate way to vindicate the public policy." Grubba v. Bay St. Abrasives, Div. of Dresser Indus., Inc., 803 F.2d 746, 747-48 (1st Cir. 1986) (citing Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 511-12 (1985) aff'd, 397 Mass. 1004 (1986)). "[A] finding that certain conduct contravenes public policy does not, in itself, warrant the creation of a new common law remedy for wrongful dismissal by an employer. The rationale for implying a private remedy under the public policy exception to the traditional rule governing at-will employment contracts is that, unless a remedy is recognized, there is no other way to vindicate such public policy." Melley, 19 Mass. App. Ct. at 511-12 (holding that a plaintiff may not bring a wrongful discharge claim against an employer on grounds of age discrimination without following the procedures of the comprehensive legislative scheme prohibiting age discrimination in employment). "This tenet applies whether the remedy is vindicated by a state or federal statute." Carter v. Tropicana Prods. Sales, Inc., No. 07-10971, 2008 WL 190791, at *2 (D. Mass. Jan 4, 2008) (citing Valerio v. Putnam Assoc. Inc., 173 F.3d 35, 46 (1st Cir. 1999)). In this case, the public policy against discrimination on the basis of disability is already protected by the comprehensive legislative scheme, M.G.L. c.151B. The remedial scheme in c. 151B precludes the creation of any common law claim based on the same public policy. Melley, 19 Mass. App. Ct. at 513 (finding that where there is a comprehensive remedial statute, such as M.G.L. c. 151B, the creation of a new common law action based on the public policy against discrimination expressed in the statute would interfere with that remedial scheme); Charland v. Muzi Motors, 417 Mass. 580, 585 (Mass. 1994) (noting that the appeals court's "decisions have consistently applied this view of the exclusivity of c. 151B remedies"). Like M.G.L. c. 151B, the

public policy against discrimination is expressed in and protected by the federal statutory scheme of the ADA, upon which Wong bases her first claim. See Valerio v. Putnam Assoc. Inc., 173 F.3d 35, 46 (1st Cir. 1999) (applying Melley and concluding that the federal remedy contained in the Fair Labor Standards Act precluded a cause of action for wrongful termination in violation of public policy).

### B.     Plaintiff's Motion for Leave to Amend the Complaint

Under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint before trial is freely granted when justice so requires. "Despite the liberal amendment policy, the Court should deny a motion for leave to amend if, among other reasons, the amendment would be futile." City of Lowell v. ENEL North Am., Inc., __ F. Supp. 2d __, 2011 WL 841232, at *5 (D. Mass. Mar. 8, 2011) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Wong's proposed amended complaint discards the breach of contract and breach of implied covenant of good faith and fair dealing claims and limits Wong's causes of action to two Counts:   disability discrimination based upon her TMJ and head injury under the ADA (Count I) and "policy and practice discrimination" (Count II).

Allowing Wong to amend her complaint would be futile since her proposed amended complaint nonetheless fails to state a plausible legal claim under either Count. Count I of the proposed amended complaint leaves Wong's ADA claim essentially unchanged.[8]   For the reasons stated in Section V.A. *supra*, that claim is unexhausted. Count II of the proposed amended complaint alleges "policy and practice discrimination" against Resolve. Wong alleges that she was

---

[8]In her amended complaint, Wong claims that she alleged discrimination based on "perceived aids" and "back injury and TMJ with server [sic] migraine" in the MCAD charge. See Proposed amended complaint ¶ 10 attached to Wong's motion to amend. Such characterization of the discrimination Wong alleged in her MCAD charge does not comport with the discrimination she in fact alleged in that charge. As discussed *supra*, Wong alleged in her MCAD charge only discrimination based upon perceived AIDS.

entitled to disability accommodation under the ADA and company policy, as well as short term disability, but that defendant did not give her an opportunity to apply for either. In addition to mirroring her allegations in the original complaint (in Counts II and III for breach of contract and breach of the implied covenant of good faith and fair dealing), Wong's allegations that Resolve failed to comply with its own company policy in providing short term disability or an accommodation sounds in breach of contract or as unlawful retaliation claims which the Court has already addressed above and dismissed.

Even if the Court could construe Count II in the proposed amended complaint, alleging "policy and practice" discrimination, as a claim for disparate impact discrimination under Title VII and the ADA based upon a particular employer's policies or practices that have a disparate impact on a protected class, Wong has not alleged a factual basis for such a claim. See, e.g., E.E.O.C. v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 600-01 (1st Cir. 1995) (noting that Title VII prohibits "disparate impact discrimination, arising from 'the consequences of employment practices, not simply the motivation'" and that the "'disparate impact approach roots out 'employment policies that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity'") (citations omitted); Femino v. NFA Corp., 274 Fed. Appx. 8, 10 (1st Cir. 2008) (noting a claim for disparate impact discrimination under the ADA requires *inter alia* that a plaintiff "'demonstrate a disparate impact on a group characteristic that falls within the protective ambit of the ADA'" and "'demonstrate a causal relationship between the identified practice and the disparate impact'") (quoting E.E.O.C, 48 F.3d at 601). Wong's MCAD charge does not identify which policy, if any, had a disparate impact on any particular class characteristic (i.e., individuals with disabilities). (Def. Opp. to Pl. Mot. to

17

Amend at 9).  Moreover, even if the Court were to liberally construe Wong's proposed amended complaint to include a disparate impact claim, despite not having clearly alleged such claim, Wong's failure to raise it before the MCAD precludes her from raising it before the Court at this time.  See, e.g., Cosme v. Salvation Army, 284 F. Supp. 2d 229, 241 (D. Mass. 2003) (dismissing plaintiff's disparate impact claim for failure to exhaust her administrative remedies or otherwise give notice of such claim).  Because Wong's proposed amended complaint fails to state a plausible claim for relief, granting her leave to amend would be futile.  Accordingly, Wong's motion for leave to amend is denied.

## VI. Conclusion

For the foregoing reasons, Resolve's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.  Wong's motion for leave to amend the complaint is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge